## SESSIONS *vs.* LITTLE.

Where evidence of an act done by a party is admissible, his declarations, made at the time, having a tendency to elucidate or give a character to the act, and which may derive a degree of credit from the act itself, are also admissible, as part of the *res gestæ.*

The validity of a sale of personal property, as against creditors, must depend upon the laws of the place where the sale was made, the vendor being at the time a resident of that place, and the property there situate ; unless circumstances are shown to bring the case within some exception to the general rule.

TROVER for 5000 lbs. of salts of lye.

The parties both claimed title to the property under one David Bean, who, at the time of the transaction hereafter mentioned, was a resident in a place called Letter B, in the state of Maine.

It appeared in evidence that previous to the 26th of August, 1836, said Bean owned a farm at that place, on which was a potash, and that he had there cattle and other personal property. On said 26th August he executed a deed of the farm to the plaintiff, the consideration inserted therein being $600,—which was duly acknowledged, and recorded on the 30th of the same month. At the same time he executed a bill of sale to the plaintiff of all his personal property, among which was four hundred bushels of ashes, from

which the salts in question were afterwards manufactured, at the potash on the farm. The person who wrote the deed and bill of sale, and who lived sixteen miles distant, testified that he went there at the request of the plaintiff, for that purpose—that at the time of the execution and delivery of said deed and bill of sale, he saw no money pass from the plaintiff to Bean—that three or four papers were given up by the plaintiff to Bean, the contents of which he did not know otherwise than by what they said at the time; and when they left Bean's the next day, all the real and personal property remained in the possession and custody of Bean, and in the same situation as when they went there, except two horses and a wagon, which the plaintiff took away with him. The plaintiff thereupon proposed to ask the witness what the plaintiff and Bean, at the time of passing the papers, said they were. The defendant objected, and the court ruled it to be inadmissible; to which the plaintiff excepted.

Another witness testified that he was employed by the plaintiff to go to Letter B, and manufacture salts out of said four hundred bushels of ashes—that he accordingly went, and did manufacture them.

There was evidence, on the part of the defendant, that Bean and his boy, and several other persons employed by Bean, assisted in manufacturing the salts, and that Bean continued in the exclusive possession of the farm; and that all the personal property remained under his control, as before the bill of sale, and that the conveyance of the property to the plaintiff was not known until Bean afterwards absconded.

On the 1st of February, 1837, the defendant proposed to Bean to purchase the farm, and the salts in question; and it was ultimately agreed between them that the defendant should have the farm for $300, and the salts for $3.00 per hundred, to be weighed at the defendant's works in Colebrook. To bind the bargain as it related to the farm, the

defendant paid Bean $5.00, which was to be forfeited in case the defendant refused to perfect the contract the next Saturday ; and in case Bean refused to close the contract at that time, the $5.00 were to go in part payment for the salts. The next morning the salts were put on board the defendant's carriage, and he and Bean left Letter B together. Soon after, it was reported that Bean had absconded, and in a short time the plaintiff came to Letter B, took possession of the farm, and the personal property there, and has had them ever since. Bean has never returned.

Upon this evidence the court instructed the jury, that although the plaintiff and Bean might not have had any fraudulent views in executing the deed and bill of sale mentioned, yet suffering the personal property afterwards to remain in the custody, and under the control of Bean, was fraudulent in law, against subsequent purchasers for a valuable consideration ; and in case they should be satisfied, from the evidence and circumstances in the case, that the defendant purchased the salts *bona fide,* and paid a valuable consideration for them, he was entitled to their verdict in his favor ; to which instruction the plaintiff excepted.

The jury returned a verdict for the defendant, and the plaintiff moved for a new trial.

*Young,* for the plaintiff. 1. The declarations of the plaintiff and Bean, made at the time the papers were delivered by the plaintiff, and tending to show their character, were the *res gestæ*—part of the transaction—and therefore competent testimony. They constitute the very fact which is the subject of inquiry. 1 *Stark. Ev.* 63, *and cases cited ; ditto* 301 ; *Roscoe's Evid.* 21 ; 2 *Stark. Rep.* 57 ; 1 *Phil. Ev.* 202, (219 ;) 1 *Camp.* 177 ; 2 *Camp.* 512 ; *Bull. N. P.* 17 ; 7 *Green.* 421, *Haven* vs. *Brown.*

2. The vendor's remaining in possession after an absolute conveyance of chattels, is *prima facie* evidence of fraud against creditors, and perhaps against *bona fide* purchasers

for a valuable consideration, having no notice, express or implied, of the former sale. But it is not fraudulent in law.

The statute of the 27th of Eliz. applies to lands only. 1 *Story's Eq.* 409, *note* 2.

It was resolved in Twyne's case that no purchaser should avoid a precedent conveyance made by fraud and covin, but he who is purchaser for money, or other valuable consideration. 3. *Co.* 80. The defendant's purchase was not *bona fide.* There are various circumstances in the case to show this. The deed to the plaintiff was recorded, and the defendant had implied notice of the sale of the farm. 2 *Johns. Rep.* 510; 1 *Story's Eq.* 392; 6 *N. H. Rep.* 254, *Montgomery* vs. *Dorion.* Bean absconded, and the defendant carried him away—he carried the salts in a contrary direction from the market—and there is no evidence to show a payment by him. The defendant, then, is not entitled to hold the salts, because he does not stand as a *bona fide* purchaser. 3 *Co.* 80; 2 *Barn. & Ald.* 134; 1 *Taunt.* 381; 3 *N. H. Rep.* 415; 2 *Stark. Ev.* 530; 1 *Story's Eq.* 387.

As between voluntary conveyances, the first shall prevail. 1 *Story's Eq.* 414, 346, 373.

It has been held that where the same goods have been sold to two different persons, by conveyances equally valid, he who first lawfully acquires possession shall hold them against the other. 17 *Mass. Rep.* 110, *Lanfear* vs. *Sumner.* The application of the rule in that case is disapproved in 5 *N. H. Rep.* 570; *also in Story's Conflict of Laws* 323, *note* 1.

If, however, the rule applies to this case, the plaintiff had the first possession. He manufactured the salts.

*H. A. Fletcher, & Wells*, for the defendant. The question, fraud or no fraud, is one for the consideration of the jury. 3 *Barn. & Adol.* 498, *Martindale* vs. *Booth, and cases cited;* 6 *East* 257, *Dewey* vs. *Bayntun;* 5 *Taunt.* 212, *Reed* vs. *Blades.*

In this case, the bill of sale being absolute, from its nature it would require immediate transmutation of possession. It must accompany and follow the deed, otherwise it is fraudulent and void. 2 *Term. Rep.* 587, *Edwards* vs. *Harben;* 3 *B. & Adol.* 362, *Shears* vs. *Rogers.*

When the sale is absolute, possession and use of the goods afterwards, by the vendor, is always *prima facie*, and if unexplained, conclusive evidence of a trust. 3 *N. H. R.* 425, *Coburn* vs. *Pickering, and cases cited;* 4 *N. H. R.* 309, *Trask* vs. *Bowers;* 5 *N. H. R.* 364, *Lewis* vs. *Whittemore;* 4 *N. H. R.* 176, *Parker* vs. *Pattee.*

Here the possession of the vendor was the same for six months after, as before the sale, and even up to the time he left the country. This is in nowise explained or satisfactorily accounted for. The fact that the plaintiff took a deed of the farm at the same time the bill of sale was executed, can furnish no reason why the vendor should remain in possession of both the real and personal property, without some contract.

The sale from Bean to the plaintiff has almost every sign and mark of fraud. It was general " of all the property Bean was possessed of." There was no delivery, and it was kept secret.

The notoriety of the transfer is always a strong circumstance to rebut the presumption of fraud. 1 *M. and S.* 251, *Leonard* vs. *Baker;* 4 *Taunt.* 823, *Watkins* vs. *Birch;* 8 *Taunt.* 838, *Jezeph* vs. *Ingram;* 2 *B. & P.* 59, *Kidd* vs. *Rawlinson;* 1 *Ld. Raym.* 724, *Cole* vs. *Davis.*

The statute 27 Eliz. c. 4, being in *pari materia* with the 13 Eliz. c. 5, is often referred to, to illustrate the doctrine laid down respecting the construction of the latter statute. The 27 Eliz. was enacted for the protection of purchasers, as the 13 Eliz. was for the protection of creditors. Both the statute of the 13 Eliz. c. 5, and the 27 Eliz. c. 4, are in affirmance of the common law, and both have been adopted here.

It is said by the plaintiff, that it was resolved in Twyne's case "That no purchaser should avoid a precedent convey- 'ance made by fraud and covin, but he who is a purchaser 'for money, or other valuable consideration."

If the plaintiff had paid a full and fair consideration, and the purchase had been by fraud and covin to prejudice present or future creditors, or subsequent *bona fide* purcha- sers, in that event the subsequent purchaser, to hold in pref- erence to the first purchaser, must show that he paid money, or other valuable consideration, according to the rule above laid down in Twyne's case, 3 *Co.* 80. But it does not ap- pear that the plaintiff paid any consideration whatever; and as the possession and use of the articles sold remained in the donor, which clearly evinces the fraud and covin, it is not necessary for the subsequent purchaser to show that he paid a consideration; for the rule of law is "that where 'the same goods are sold to two different persons, by con- 'veyances equally valid, he who first lawfully acquires the 'possession will hold them against the other." 17 *Mass. Rep.* 110, *Lanfear* vs. *Sumner;* 5 *N. H. R.* 570, *Ricker* vs. *Cross.*

A subsequent purchaser, from one who has conveyed property fraudulently, stands substantially on the same foot- ing with a creditor, and shall hold it against the first pur- chaser. *Hilliard's Elements of Law* 91.

PARKER, C. J. The declarations of the parties, respect- ing the papers delivered by the plaintiff to Bean, at the time of the execution of the deed and bill of sale, were compe- tent evidence, and should have been admitted. Where ev- idence of an act done by a party is admissible, his declara- tions, made at the time, having a tendency to elucidate, or give a character to the act, and which may derive a degree of credit from the act itself, are also admissible, as a part of the *res gestæ.* The declaration proposed to be proved in this case may have a material bearing in giving a character

to the act of delivery, or may have a direct tendency to elucidate that act, and derive a degree of credit from the fact that the papers were passed over at the time. The question is whether any consideration was received for the sale. It appears that the vendee handed to the vendor certain papers. These may have been evidence of debts due from the vendor to the vendee, and delivered up as the consideration of the conveyance, or they may not. If it was said that they were of that character, and that they were received in satisfaction, it will show that the vendor received, at the time, something which he admitted to be of sufficient value, as payment. There is an importance, therefore, attached to the declaration, as part of the transaction itself. It may at least show that the parties professed, the one to pay, and the other to receive, the consideration. How far it may satisfy a jury that what was done was, in good faith, a payment, is another matter. The weight of the evidence may be but light, but it is admissible. 1 *Stark. Ev.* 46—49 ; 8 *N. H. Rep.* 262, *Gordon* vs. *Shurtliff.*

The instruction to the jury was not strictly correct, even if the validity of the sale, and the rights of the parties, depended upon the laws of this state. It is not necessary, however, to discuss that question at this time. The contracts under which both parties claim were made in the state of Maine, where the vendor resided, and where the property was situated, and the rights of the parties are therefore to be settled by the laws there in force, at the time when the contracts were made. *Story's Conflict of Laws* 200, 317 ; *French* vs. *Hall, Cheshire, July T.* 1838, *ante* 137.

The fact that the defendant was an inhabitant of this state when he purchased, and that after the purchase he brought the property here, cannot alter the case, or change the rule by which we are to enquire whether the sale to the plaintiff was valid against a subsequent purchaser, and whether the defendant shows himself to possess that character.

There has been no enquiry upon this point, and it may be that there is a difference in the rules of law upon this subject in the two governments. *5 Green.* 295, *Sherwood* vs. *Marwick.*

For this reason, as well as on account of the rejection of the evidence, there must be a 　　　　　　　*New trial.*