# MERRIMACK,

## DECEMBER TERM, A. D. 1839.

### BUSWELL *vs.* DAVIS.

A defendant in equity cannot, in support of his answer, give his own declarations in evidence, as part of the *res gestæ*, where they do not tend to elucidate or give a character to any act done by him.

A creditor who has knowledge that a part of the real estate of his debtor is mortgaged, apparently for its full value ; and who is informed by another creditor that he proposes to procure an arrangement by which that mortgage shall be removed, and one taken to himself, and advises the other creditor to effect the arrangement, as it will be good security for his debt ; cannot be permitted, as against such other creditor, to attach the land, after the agreement has been made, and the first mortgage discharged, but before the new one is executed. An attachment under such circumstances is fraudulent.

IN EQUITY. The bill stated that on the first day of November, 1835, the plaintiff lent to William W. Estabrook $1·000, and took therefor the promissory note of Benjamin Damon, Joseph P. Stickney, and Timothy Chandler, for the same sum, payable to Estabrook, and by him indorsed to the plaintiff, in which note Estabrook was in fact principal, and the other parties thereto sureties—that on the 17th day of October, 1836, Estabrook, for value received, gave to Damon and Stickney his promissory note for $3·000, payable to them, or order, on demand, with interest, and at the same time mortgaged to them a certain tract of land, bounded, &c., known as the Call place, to secure said note—that on the 18th day of May, 1837, Damon and Stickney assigned and set over the note and the mortgage to the Merrimack County Bank, upon condition that the assignment should be void if they should pay to the bank the contents of two promissory notes signed by Estabrook, Damon and Stickney, pay-

able to the bank, one dated October 18, 1836, for $1·500 ; the other dated November 16, 1836, for $1·000—that on or about the 10th day of July, 1835, Estabrook gave his promissory note for $1·500, to the defendant, and to secure payment thereof mortgaged to him three several parcels of land ; and that the defendant, at the March term of the court of common pleas, in 1838, recovered judgment for $1·474·65 damages, and for his costs of suit—that on the 29th day of August, 1838, the principal sum remained due to the plaintiff, on the note of Damon, Stickney and Chandler ; the note of $3·000 from Estabrook to Damon and Stickney remained wholly unpaid, and the mortgage to secure the same in full force ; there remained due to the bank, on the two notes secured by the assignment of the mortgage, about $600 ; and the land mortgaged by Estabrook to Damon and Stickney was then incumbered thereby to the full value thereof— that Estabrook had failed, and was wholly insolvent, and that Damon, Stickney and Chandler were, on said 29th day of August, and still are, fully able to pay the sum of $1·000.

It then stated, that on said 29th day of August the plaintiff applied to Estabrook for payment, who said he could not then pay the debt, but told the plaintiff he thought he could make an arrangement with Damon, Stickney and Chandler, and the bank, to discharge the mortgage for $3·000 ; and proposed, if this arrangement could be effected, that he would give the plaintiff a mortgage of the same land, provided he would discharge Damon, Stickney and Chandler from their liability, and take the note of Estabrook alone for the debt— that the plaintiff on the same day went to the defendant, and stated to him the situation of his demand, and also confidentially informed him of the proposition which Estabrook had made, and told him he had been recommended to consult with him as to the sufficiency of the security proposed to be given ; and the defendant said that the security would be sufficient and safe, and moreover told the plaintiff that he should be happy to assist him in any way respecting the

Buswell *v.* Davis.

business, and invited the plaintiff to call again on him, if he should have further need to consult and advise with any one in the progress of said business.

It then alleged that the defendant, under pretence of befriending the plaintiff, and by abuse of the confidence reposed in him, obtained knowledge of the negotiation for exchanging the security, and fraudulently advised, encouraged and procured the plaintiff to accept the proposition, in order that when the arrangement for discharging the land from the mortgage should be completed, and before the record of the contemplated mortgage to the plaintiff, the defendant might fraudulently and secretly attach the land, and so defeat the plaintiff, both of the security which he before had for his debt, and also of the security which he ought to have by virtue of the mortgage proposed to be given—that the plaintiff, trusting to the advice of the defendant, agreed with Estabrook, to accept the proposition, on the same day—that in order to carry the arrangement into effect, on the morning of the 31st day of August, it was agreed between Damon, Stickney, Chandler, Estabrook, the Bank, Joseph E. Estabrook, and the plaintiff, that said William W. Estabrook, Damon, Chandler, and Joseph E. Estabrook, should give their promissory note for $600 to the bank, for the balance due on the two notes secured by the assignment; that the mortgage should be discharged, and the note for $3·000 cancelled; that the plaintiff should give up the note held by him, and thereupon that Estabrook should give a new note to the plaintiff for $1·000, and mortgage the land to him for security; and that Estabrook should give Damon a note for $1·200, parcel of the $3·000, and a mortgage for security thereof, on the same land, subject to the mortgage to be given to the plaintiff, and should give other security for the residue—that in pursuance of that agreement, about eleven o'clock in the forenoon of the 31st of August, the note for $600 was made and left at the bank, and about one o'clock in the afternoon the assignment was cancelled and given up,

and the note of $3·000 re-delivered to Damon and Stickney; and that in the afternoon of the same day they gave up the note to Estabrook, and discharged the mortgage, and Estabrook on the same afternoon gave the plaintiff a note for $1·000, and mortgaged the land to the plaintiff, and the plaintiff in consideration thereof gave up his former note, and discharged Damon, Stickney and Chandler from their liability thereon; and Estabrook at the same time gave his note and another mortgage to Damon, in pursuance of the agreement, which mortgages were duly recorded the same evening.

It then set forth that the defendant, to prevent the plaintiff from obtaining any benefit from his mortgage, on the same 31st day of August sued out a writ of attachment against Estabrook, declaring on his judgment, and one quarter of an hour before two o'clock in the afternoon of the same day, well knowing that the bargain for changing the security was then completed, and that the assignment to the bank was discharged, secretly and fraudulently procured the land mortgaged to the plaintiff to be attached, and concealed from the plaintiff all knowledge of the attachment until the plaintiff's note, signed by Damon, Stickney and Chandler, was given up, and the arrangement completed by the execution and recording of the deeds; and afterwards caused the writ and the attachment to be returned into court, where the suit was still pending; and that the defendant claims to hold the land by virtue of his attachment, against the plaintiff's mortgage, and threatens, under color and pretence thereof, to defraud and cheat the plaintiff out of his security for his debt.

The bill then prayed that the defendant might be enjoined against claiming any thing in the land, by virtue of his attachment, contrary to the title of the plaintiff under his mortgage, and that the attachment, and every claim that might hereafter be derived under it, might, by a decree, be postponed and made subject to the plaintiff's mortgage, &c.

The defendant, in his answer, admitted the existence of the debts and mortgage, as stated in the bill, and alleged that on the 29th of August, 1838, the plaintiff informed the defendant that Estabrook wanted to change the security, and that he wished to advise with the defendant on the subject—that he told the plaintiff he considered the security the plaintiff then had perfectly good ; but the plaintiff replied, he should prefer changing it, if he could be safe in doing so, for he did not know but there might be some difficulty about his having taken unlawful interest—that the plaintiff then told him, that Estabrook had proposed to remove the incumbrance from the house in which he lived, or the other real estate particularly described in the plaintiff's bill, and give the plaintiff a mortgage thereof, if the plaintiff would give up his note against Damon, Stickney and Chandler—that he then informed the plaintiff he should consider either of those lots, free from incumbrance, abundant security for the plaintiff's debt. At the same time he further informed the plaintiff, that he had himself made some examination of the records, and then had his eye upon the property, and upon the house in which Estabrook then lived, with the intention of securing his debt against Estabrook, already partially secured by a mortgage upon other property ; but that if the plaintiff would rely upon his advice in relation to the matter, he would not allow him to take any course by which he would be injured—that the plaintiff replied that he would see Estabrook, and call on him again before making any arrangement, and took his leave, with the intention, as he supposed, of calling again in the afternoon—that the plaintiff did not call again, as he expected ; and feeling anxious to secure his own debt, and being at the same time unwilling to act except in conjunction and agreement with the plaintiff, he, in the course of the afternoon, called at the shop of the plaintiff's son, and enquired for the plaintiff, but could not find him—that he again called the next forenoon, and was informed that the plaintiff was unwell—that on the

morning of the 31st of August, having enquired, and being informed that the plaintiff had not called, he saw the plaintiff passing to and from Estabrook's store ; and from the fact that the plaintiff had disregarded his promise to call again on him, and was apparently avoiding a meeting, he concluded that, after conversing with others, the plaintiff had determined to act without consultation with him, and perhaps in a manner to defeat his plan of securing his own debt in the way he had in part disclosed to the plaintiff. In this state of things, he considered it to be his duty to take care of his own interest, and thereupon directed his attorney to make out a writ upon his judgment, and caused an attachment to be made of the real estate described in the bill.

And he alleged, that at the time of the attachment he had no knowledge whatever, directly or indirectly, of the transfer which had been, or was about being made, of the estate which he directed the officer to attach, nor had he any knowledge that the plaintiff had taken a mortgage of said estate, or that it had been relieved from the incumbrance previously upon it, until about nine o'clock in the evening, after his said attachment.

He wholly denied, that under pretence of befriending the plaintiff, and by an abuse of the confidence reposed in him by the plaintiff, he obtained knowledge of the negotiation for exchanging the plaintiff's security for his debt ; or that he fraudulently advised, encouraged or procured the plaintiff to accept the proposition of Estabrook, or to change his securities in any manner, to any extent, for any purpose ; and all intention or desire in any way to injure the plaintiff.

He averred, that he had no knowledge whatever of the exchange of securities between the plaintiff and Estabrook, until about nine o'clock in the evening, after his attachment was made—that he had no knowledge of the particular arrangement between them, and Damon, Stickney and Chandler and the Merrimack County Bank, except that before stated, and except what he may have heard long after the

Buswell *v*. Davis.

31st day of August, 1838; and denied that any person informed him of the arrangement then going forward for discharging the plaintiff's security on the note, and giving him security by a mortgage.

He admitted that he claimed to hold the land, by virtue of his attachment, for the security of his debt, not only against the plaintiff, but against all other persons.

And he further stated, that since the commencement of the suit in his favor against Estabrook, founded upon the judgment, he had purchased of Estabrook the three several parcels of land, mortgaged by Estabrook to him for the security of his debt, for the sum of $800, and gave a receipt for that sum, to be applied in part payment of the judgment which he might recover against Estabrook, in the suit still pending.

The testimony, so far as it is material to be stated, is set forth in the opinion of the court.

*Perley*, for the plaintiff, moved to suppress so much of the testimony, taken on behalf of the defendant, as related to the declarations of the defendant himself, made at other times than those mentioned in the evidence of the plaintiff.

Upon the merits, he contended, 1. That without any fraud of the defendant, and without any knowledge by him, the bargain that the mortgage held by the Merrimack County Bank should be discharged, and a new mortgage given to the plaintiff, vested no such estate in Estabrook as was liable to attachment. 5 *N. H. Rep.* 240, *Fisk* vs. *Eastman ;* 15 *Johns. R.* 458, *Stow* vs. *Tifft.* If the defendant had knowledge, he could acquire no greater right than Estabrook had. 5 *N. H. Rep.* 533, *Kimball* vs. *Blaisdell.* The consideration was paid by the plaintiff, as much as if he had paid $1·000 in money. 3 *N. H. Rep.* 170, *Scoby* vs. *Blanchard ;* 4 *N. H. Rep.* 397, *Pritchard* vs. *Brown.* The equitable estate vested in the plaintiff. If the attaching creditor had

notice, he cannot take any thing. 13 *Mass. R.* 51, *Chickering* vs. *Lovejoy.*

If no title was acquired by the attachment, the plaintiff is entitled to relief. 1 *Johns. Ch. R.* 517, *Hamilton* vs. *Cummings;* 1 *Sumner's R.* 504, *Briggs* vs. *French;* 2 *Sumner* 261, *S. C.*

2. If the defendant had notice of what was doing, without any actual fraud, he cannot maintain his claim. He had so, on his own answer. 4 *Mass. R.* 637, *Farnsworth* vs. *Childs;* 7 *Greenl. R.* 199, *Lawrence* vs. *Tucker;* 1 *Pick. R.* 164, *Priest* vs. *Rice.* The cases go upon the ground of a legal fraud. 2 *Atk. R.* 275, *Hine* vs. *Dodd;* 3 *Ditto* 646, *Le Neve* vs. *Le Neve;* 10 *Johns. R.* 461, *Jackson* vs. *Burgott;* 4 *Greenl. R.* 26, *Porter* vs. *Cole;* 4 *N. H. Rep.* 266, *Colby* vs. *Kenniston.* Knowledge of an agreement binds a subsequent purchaser. 16 *Ves. R.* 254, *Daniels* vs. *Davison;* 17 *Ves. R.* 433, *S. C.;* 1 *Merivale's R.* 284, *Allen* vs. *Anthony.*

3. The defendant had notice of the bargain, and stood by and gave no notice of his intention. A party who stands by with a dormant title is barred. *Story's Eq.* 376, 378; 1 *Vern. R.* 370; 1 *Brown's Ch. R.* 357, *Beckett* vs. *Cordley.*

4. The bill states, and the case shows, positive fraud. The defendant stood in a relation to the plaintiff that required of him the utmost good faith. He must show that he made his attachment fairly, for legal suspicion of fraud attaches. If there is fair, reasonable doubt, the transaction cannot stand. 14 *Ves. R.* 299, *Huguenin* vs. *Basely;* 6 *Vermont R.* 240, *Temple* vs. *Hooker.*

There was no way in which the defendant could have got the property fairly. It was incumbered to its full value. A note given as security and indemnity is good. 6 *Johns. Ch. R.* 281, *Roosevelt* vs. *Mark;* 15 *Mass. R.* 72, *Cushing* vs. *Gore;* 13 *Pick. R.* 426, *Little* vs. *Little.* If he was intending to commit a fraud, and to get the plaintiff to assist, a way might be devised.

An answer, called for by the bill, is not to be controlled by the unaided evidence of a single witness; but it may be discredited by matter on the face of the answer itself. 2 *Johns. Ch. R.* 93, *Hart* vs. *Ten Eyck; Ditto* 593, *Gillespie* vs. *Moon;* 9 *Cranch's R.* 160, *Clark's Ex'rs* vs. *Van Riemsdyk;* 6 *Johns. Ch. R.* 206, *Neilson* vs. *McDonald.*

*Pierce & Fowler,* for the defendant. If the defendant took nothing by his attachment, there is no reason for this suit.

The parties each took such measures as they thought fit for the security of their respective debts. The defendant was more fortunate than the plaintiff, and has a legal and an equitable title. 1 *Story's Eq.* 75, § 57; *Ditto* 372; 4 *Johns. Ch. R.* 687, *McDermott* vs. *Strong;* 1 *Paige's Ch. R.* 558, *Purdy* vs. *Doyle;* 3 *Paige* 517, *Egberts* vs. *Wood.*

If there were circumstances of mere suspicion, not leading to any definite results, they would not be sufficient to sustain the bill. 1 *Story's Eq.* 199; 4 *Johns. R.* 682, *Williams* vs. *Brown;* 3 *Monroe* 1; 5 *Gill. & Johns.* 377.

The testimony of Edwin W. Buswell alone, is in conflict with the defendant's answer. Where there is a general replication, matter in the answer, responsive to the bill, is taken to be true, unless disproved by two witnesses, or by one witness and pregnant circumstances. 3 *Bar. & Har. Eq. Dig.* 383; 1 *Wend. R.* 583, *Murray* vs. *Blatchford;* 3 *Paige* 557, *Cunningham* vs. *Freeborn.* Where discovery is asked of a particular fact, the answer is conclusive. 3 *Bar. & Har. Eq. Dig.* 383.

The defendant's attachment was duly made. In order to affect him by a mortgage, not then on record, actual fraud must be clearly proved. 1 *Story's Eq.* 392; 1 *Johns. Ch. R.* 394, *Parkist* vs. *Alexander; Ditto* 288, *Frost* vs. *Beekman;* 18 *Johns. R.* 544, *Beekman* vs. *Frost;* 2 *Johns. R.* 510, *Johnson* vs. *Stagg;* 2 *Ball & Beatty* 301; 19 *Ves.* 435, *Wyatt* vs. *Barwell;* 1 *Story's Eq.* 387; *Sugden's*

*Vendor's Ch.* 16, § 5 ; 1 *Story's Eq.* 204, § 194.   The circumstance that the defendant has an interest, is to have no effect in weighing his answer.   3 *Bar. & Har. Eq. Dig.* 384, 5.

PARKER, C. J.   We do not perceive any ground upon which the defendant is entitled to put in evidence his own statements of what passed between the plaintiff and himself ; made to third persons when the plaintiff was not present ; and respecting which the plaintiff has introduced no testimony on his part.   The declarations of the defendant to the attorney who made his writ, (stating what had previously passed between himself and the plaintiff, and similar, in effect, to the allegations of the answer upon this point,) were not against his interest ; do not in any way tend to give a character to his order for a writ, and for an attachment of the land ; nor do they elucidate or explain the act of procuring the writ.   That act explains itself.   The statements seem to have been the defendant's account of what had transpired at a previous time, which induced him then to act ; but they are not, of themselves, part of what was then transacted, having a bearing upon this case.   8 *N. H. Rep.* 260, *Gordon* vs. *Shurtliff* ; *Sessions* vs. *Little*, (9 *N. H. Rep.* 271 ;) *Gresley's Eq. Ev.* 219, 232.   If, however, the evidence was weighed, it could not alter the case.   Evidence of the defendant's declarations in his own favor, at such a time, could not outweigh evidence offered by the plaintiff, of his declarations made before and afterwards.

The merits of the case depend upon the conversation which was actually held between the plaintiff and the defendant, and the advice which the latter gave in consequence of the plaintiff's application to him.   There is no controversy between the parties relative to the existence of the debts and mortgage ; the change of the security ; or the time it was changed ; nor respecting the existence of the defendant's debt, and his attachment of the land in question.

It appears that the plaintiff held a note, signed by Damon and others, payable to Estabrook, and indorsed by him. It was understood that the note was an accommodation note, and that the debt was in fact his. To secure the signers for this and other liabilities, a note and a mortgage of the premises, the title to which is now in question, were made to some of them ; and this had been assigned to the Merrimack County Bank, to secure debts there. Estabrook had failed, and the equity of redemption seems to have offered no security to any of his creditors. The defendant, who had a debt on which he had obtained judgment, and which was secured in part by a mortgage of other property, had not seen fit to levy upon, or attach it. Under these circumstances, an agreement is made between Estabrook, and those who were under liabilities for him, the plaintiff, and the bank, by which the mortgage then in the possession of the bank was to be discharged, and other security made to the bank ; the plaintiff was to give up the note he held, and take a mortgage of the same property ; a further mortgage was to be made to one of the sureties, and other security in some form was to be given for the remainder of his liabilities to them. This agreement was carried into execution. It took a considerable portion of the day and evening to draw the writings, and perfect the arrangement. After the parties to it had begun to carry it into effect, the defendant caused the land to be attached, and this was not known to the plaintiff and others until their agreement was completed and the deeds recorded.

As the matter now stands upon the records, the mortgage given to secure Damon and Stickney, for their liabilities, and which was assigned to the bank, is discharged ; and the defendant has an attachment upon the land, made some hours before the plaintiff's mortgage was executed and recorded ; and this results not from any payment of any debt having been made by Estabrook, to any of the parties, but from an arrangement for a mere change of securities between

himself and some of his creditors, the plaintiff being one, by which the plaintiff was to have had a mortgage of this land free from any incumbrance.

If the attachment of the defendant is a valid security as against the plaintiff, he has derived a benefit from this alteration of the security, which it was not intended he should have had.

We are not required to give an opinion upon the question, whether a creditor can, by means of an attachment, avail himself of the benefit of a mere change of mortgages, in a case where he had no knowledge that such change was intended, but designed merely to avail himself of his right to attach the equity in redemption. If in such case the change was to his prejudice, the mortgage substituted being of a greater amount than that previously existing, he might well contend that his rights could not thus be affected by transactions to which he was no party, and of which he had no notice. Even if the new mortgage upon the land was of less amount than that previously existing ; still, if he had no knowledge respecting the intention to make an exchange, and attached in good faith, he might, perhaps, well claim the benefit of the accidental advantage he had derived, and hold the land discharged wholly from incumbrance, because the prior mortgage was removed, and the new one executed subsequent to his attachment. We do not undertake to say that such would be the result.

Nor is the case presented one where the attaching creditor has mere knowledge that a change of security is intended, and attaches with an intention of availing himself of the change, by interposing his attachment before the new mortgage, in case the parties to the contemplated change shall perfect it, without the caution of examining the records, to ascertain whether any creditor has attached. That would be a much stronger case than the other ; but whether the creditor might not, in such case, legally avail himself of the want of caution, asserting his right to attach, and take the

chance of the removal of the existing incumbrance, so long as he in no way participated in advising to the change itself, is a question we may pass by at this time.

The evidence carries the present case still further. The answer of the defendant shows that he had good reason to believe that such a change was probably in progress, and admits that the plaintiff had applied to him, stating that Estabrook had proposed to remove the incumbrance from this or another lot, and to give him a mortgage, and wishing to advise with him on the subject, and that he informed the plaintiff he should consider either of those lots, free from incumbrance, abundant security for his debt. But he avers in his answer, that he at the same time informed the plaintiff that he had himself made some examination of the records, and then had his eye upon the property, with the intention of securing his own debt, which was only partially secured— that he further told the plaintiff, if he would rely upon his advice he would not allow him to take any course by which he should be injured—that the plaintiff was to call on him again, before making any arrangement, but did not—that he twice sought an interview with the plaintiff, without success—and that afterwards, on the 31st of August, seeing the plaintiff passing to and from Estabrook's store, he concluded he had determined to act without consultation with him, and perhaps in a manner to defeat his plan of securing his own debt in the way he had in part disclosed to the plaintiff; whereupon he thought it proper to take care of his own interest, and made the attachment.

The evidence however fails to sustain him in this part of the case. It is not contended that the mortgage to Damon and Stickney was invalid, and there is evidence to show that the property was not, at the time, of sufficient value to satisfy that incumbrance. It appears, by the answer, that the defendant, although aware that he had only partial security for his debt, had made no attempt to obtain farther security by an attachment of the equity of redemption. That

he had had an eye upon the property, with any supposition that he could make any security out of it while Damon and Stickney's mortgage existed, is not to be supposed ; for it has not been suggested, in the hearing, that there was any way in which it could have been rendered available to him. Why then should he have wished to see the plaintiff further ? In what way did he propose that the plaintiff should act, under his advice, so that the plaintiff's project should be promoted, and he obtain further security at the same time ? And how was the change of the security, without his concurrence, to be prejudicial to him ? We have no information upon this part of the subject. No reason is apparent, why he should have desired the plaintiff to refrain from taking the mortgage, or why, if he thought the property would furnish good security, he should not have said so. And, upon the evidence before us, he went further than he admits in his answer.

Edwin W. Buswell states, that his father, the plaintiff, was taken sick early in the afternoon of the 29th, and was confined to his bed through the day following—that in the course of this last day the defendant called at the shop of the witness, and enquired for his father, and was told that he was sick at the house—that the defendant then said the plaintiff had consulted him in relation to exchanging his security for the Estabrook debt, and taking a mortgage of the property in question, and that he had told the plaintiff he thought the security would be good, but he would consider further of it, and see him again—that the defendant then added, " I think the security will be good, and advise your father to make the arrangement." The witness states that he understood, at the time, that the defendant wished him to communicate what he had said, to his father, which he accordingly did. The witness further states, that neither at this or any other time did the defendant say that he was desirous that the arrangement for the new security should not be made till further consultation with him, or any expression of that import.

W. W. Estabrook states, that not long after the defendant's attachment was made, he saw the defendant, who said to him, " Old Buswell has been down, and is rather savage, is'n't he.　He had better keep still, for if he do'n't, we can cheat him out of his debt ; for I can levy the whole amount of my debt on the property attached, and release the property mortgaged to me, and I could, if I was disposed, buy up some of your Boston debts, and secure them on that property"—that the defendant then said, " I met Mr. Buswell opposite to Walker's, and Buswell said he did not consider himself perfectly secure on his demand against you, and that he talked of relinquishing his security, and taking security on real estate, and wanted to enquire of me in regard to it"— that the defendant further said the plaintiff named to him the house where the witness lived, and the Call place, and said he told the plaintiff that either of those places, if made perfectly clear, and he had the first mortgage, would be good security—that the plaintiff appeared to be in a hurry, and he said to him, " I advise you to go on and take the security"— that the plaintiff then said he would call on him again, and he replied, " I shall be glad to assist you in any way. I have a demand against Estabrook which I do'n't think perfectly secured."　This witness further states, that at a subsequent time, while trying to negotiate with the defendant in regard to his claim, the defendant said he had been watching an opportunity to secure his debt ever since the witness failed, and that when the witness was building he thought his property might not be covered, and examined the records, and made enquiries at the Merrimack County Bank.

The evidence of these two witnesses shows not only that the plaintiff applied to the defendant for advice about taking the mortgage, but must be regarded as establishing the fact that the defendant advised to the changing of the security. In his conversation with E. W. Buswell he made no mention of his own demand, nor desired to see the plaintiff further before the arrangement was made ; and although it does

appear, according to the statement he made to Estabrook, that he said to the plaintiff he did not consider his own debt secure, it was not with any suggestion that he expected to make any security out of this property, or that he desired the plaintiff to act with any reference to his interests. There is no attempt to show how the defendant could have obtained any security on this property, or how the plaintiff might have provided for the defendant's interest in the proposed arrangement, or that the plaintiff acted in any way to his prejudice.

Without going into the question, whether the testimony does not prove that the defendant advised to the arrangement with the very purpose of interposing an attachment, after the mortgage to Damon and Stickney was removed, and before that to the plaintiff was executed, it is sufficient that, being consulted respecting the arrangement, he advised the plaintiff to effect it. If he desired to have any provision made in that arrangement for himself, he should have so stated explicitly. He cannot be permitted, after giving such advice, to avail himself of the exchange of the mortgages, and thereby obtain a security against the plaintiff, which he could not have had against Damon and Stickney. An attachment, with the purpose of obtaining a security prior to that of the plaintiff, under these circumstances, would not be a fair exercise of superior diligence, but would operate as a direct fraud upon the plaintiff.   1 *Brown's Ch. R.* 357, *Beckett* vs. *Cordley ;* 6 *Vermont R.* 240, *Temple* vs. *Hooker ;* 10 *Johns. R.* 461, *Jackson* vs. *Burgott ;* 13 *Mass. R.* 51, *Chickering* vs. *Lovejoy.*

A decree must be entered, therefore, according to the prayer of the bill, that the defendant be enjoined from claiming any thing in the land, by virtue of his attachment, against the title of the plaintiff under the mortgage, and that all claim under the attachment be subject to that incumbrance.