## TENNEY vs. EVANS.

The declarations of a party to the record are admissible in evidence against him, whether he be a trustee merely, or the party in interest.

Where a suit is brought by an infant, who sues by his guardian, the declarations of the guardian are admissible against the plaintiff, although the infant on coming of age prosecutes the suit in his own name.

Whenever the conduct of a person at a given time becomes the subject of inquiry, his expressions, as constituting a part of his conduct, and indicating his intention, cannot be rejected as irrelevant, but are admissible as part of the *res gestæ*.

A guardian purchased property and placed it on the land of his ward, where it was attached as belonging to the guardian. In an action of trover for the property, brought in the name of the ward against the sheriff, it was—*Held*, that the declarations and acts of the guardian at the time of the purchase, tending to show the fraudulent character of the transaction, were admissible in evidence, both as a part of the *res gestæ* and as the declarations of a party to the record.

In an action of trover, brought in the name of an infant by his guardian, the statements of the guardian, tending to show that the property is his, are competent evidence against the plaintiff, as the declarations of a party to the record.

In general, a guardian cannot by his contract bind the person or estate of his ward.

If a guardian purchase property and place it on the land of his ward, it will not belong to the ward so that it cannot be attached as the property of the guardian, until the ward becomes of age and ratifies the transaction.

TROVER, for some cattle and farming tools.

The action was commenced and made returnable at the September term, 1839, by the plaintiff, who was then a minor, and sued by David Tenney, his guardian, against the defendant, who was then the sheriff of this county, alleging the conversion on the 23d of July, 1839. The plaintiff became of age since the last continuance, and now prosecutes the suit in his own name.

At the trial on the general issue, it was admitted that one John Page, by deed executed on the 16th day of March, 1837, conveyed to the plaintiff and one Mary E. Clifford, then also a minor, his farm in Dunbarton. The deed was deposited with a person, to be delivered on the death of the

grantor, which took place on the 14th day of August, 1837, and the deed was then delivered.

David Tenney, the father of the plaintiff, was appointed his guardian on the 28th day of September, 1837. The evidence tended to prove that David Tenney as guardian, and by contract with the guardian of Mary E. Clifford, undertook to carry on the whole farm, and to render to her one fourth part of the produce. In the spring and summer of 1838, he bought of sundry persons the property in question and put it upon the farm, calling it the property of his ward. For some portion of it he gave notes in common form, signed, " David Tenney, Guardian of J. P. Tenney." These notes have not been paid. For other portions he paid in goods from his store in Concord, the stock of which was mortgaged, but left in his possession and under his control. For another part he assigned in payment a note payable *to* himself, and given for a debt due him from the promiser before the year 1837. For one calf the plaintiff paid the money, he being then a minor and living with his father as a clerk in the store. For the property thus purchased the guardian took bills of sale, receipted as follows : " Received payment of David Tenney, Guardian of John P. Tenney."

The defendant admitted the taking of the property by one of his deputies, upon a writ against David Tenney, and its sale on the 23d day of July, 1839, and alleged that it belonged to David Tenney, who thus fraudulently attempted to conceal it from his creditors. He offered evidence tending to show that the guardian had no other property of his ward than the farm and its proceeds ; and also proof of the acts and declarations of the guardian at the times when he purchased the property, and at other times before the attachment, tending to prove the fraudulent character of the transactions. A witness testified that after the property was attached, he told the guardian " he thought it would be hard for him to prove that all the property was John's," to which the guardian replied that " Harris told him if he could prove

that any part of it was John's, he could throw the cost upon them." To all this evidence the plaintiff objected, but it was admitted by the court.

The jury were instructed, that if they believed the guardian bought the property in good faith, with the plaintiff's money, for the benefit of his ward, their verdict should be for the plaintiff; but if they believed he bought it with his own money, though he intended it for his ward, the action could not be maintained against the creditors of the guardian, whose claims could not be delayed or defeated by such a disposition of his property. The jury were also instructed that if the guardian bought the property and gave notes for the price, in the usual form, with the addition of the words, " Guardian of J. P. Tenney," to his signature, the notes would create a personal liability on the guardian, but would not affect the estate of his ward, although the payees might have intended to give credit only to the estate, and supposed it was bound by the notes, and consequently the notes gave the ward no interest in the property which would enable him to maintain this suit against the attaching creditors.

The jury returned a verdict for the defendant, which the plaintiff moved to set aside on account of the admission of the evidence and the instructions above stated.

*Ainsworth,* for the plaintiff. 1. We contend that a guardian may place property on the land of his ward, so that the ward can assume it and make it his own on coming of age. 1 *Vesey, jr.* 32, *Wilkinson* vs. *Stafford.*

It has been held in Massachusetts that a guardian cannot bind the estate of his ward by a special contract. But such a principle might be extremely injurious to the estate of the ward. If the guardian could not thus improve the estate entrusted, the ward might be able to derive no benefit from it. This need not injure the creditors of the guardian, for there would not necessarily be any difficulty in ascertaining his property, although he might have placed it there with

intent to defraud his creditors. Perhaps there might be no remedy at law, and the party might be forced to wait until the ward should become of age, and make his election.

2. The declarations and acts of the guardian are inadmissible. 1 *Saund. Pl. & Ev.* 51 ; 2 *Stark.* 366. They stand like the declarations of a *prochein ami*, which are inadmissible. *Webb* vs. *Smith, Ryan & Moody* 106. So an answer of a guardian in chancery is not admissible against his ward. 1 *Stark. Ev.* 285 ; 1 *Phil. Ev.* 362 ; 3 *Johns. Ch.* 367 ; *Gresley's Eq. Ev.* 24, 323. The guardian was a competent witness, and for this reason also his declarations were not admissible. *Wilson* vs. *Boerem*, 15 *Johns.* 286 ; *Alexander* vs. *Mahon*, 11 *Johns.* 185.

*Pierce*, for the defendant. So far as relates to the connection between the guardian and ward, we agree with the plaintiff ; but here the question is between the guardian and ward on one side and the creditors on the other.

The declarations of a party to the record, and of one identified in interest with him, are admissible against him. *Greenl. Ev.* § 203, 211. The guardian comes within both these descriptions. But they are not admissible until after the executor or guardian is fully clothed with authority. 5 *Esp.* 72, 134. In general the principal is bound by the declarations of his agent, while acting within the scope of his authority. In *Webb* vs. *Smith*, cited for the plaintiff, it was held merely that the declarations of a *prochein ami* were not admissible for the defendant when made before the action was brought. 9 *Petersdorff's Ab.* 189 ; 7 *T. R.* 663, 667. The declarations in this case accompanied the purchase of the property.

A guardian cannot by his contract bind the person or estate of his ward. 5 *Mass.* 299, *Thacher* vs. *Dinsmore ;* 6 *Mass.* 58, *Forster* vs. *Fuller ; 7 Mass.* 6, *Granby* vs. *Amherst ;* 1 *Pick.* 314, *Jones* vs. *Brewer.*

GILCHRIST, J. The first question in this case arises upon the admission of the acts and declarations of the guardian in relation to the property. The case finds, that in order to prove that the guardian owned the property, evidence was received of his acts and declarations at the times when he purchased it, and at other times before the attachment, tending to show the fraudulent character of the transactions. This evidence is of two descriptions. That part of it which relates to the guardian's declarations at other times than those when he bought the property, must be considered in reference to the guardian's position as a party to the record, for it is on that ground only that it is admissible.

The plaintiff contends that the guardian was competent to testify, and therefore his declarations could not have been given in evidence. It is stated in the case of *Ross* vs. *Knight*, 4 *N. H. Rep.* 238, that the declarations of a person relating to a fact, who might have been called as a witness, are inadmissible. The cases cited in the argument for the plaintiff merely recognize the principle stated in *Ross* vs. *Knight*. But it is necessary to go somewhat farther than this, and to establish the position that the defendant might have compelled the guardian to testify, in order to exclude the evidence of his declarations. But the plaintiff's position is not without authority to support it. In *Cowling* vs. *Ely*, 2 *Starkie N. P. C.* 366, a minor brought a suit by his guardian, and a witness was offered by the defendant to prove declarations made by the guardian, the defendant contending that they were competent, because the guardian was liable for the costs. But *Abbott*, J., was clear that they were not admissible against the plaintiff. The report of the case does not show on what ground the ruling was made. But in *James* vs. *Hatfeild*, *Strange* 548, Lord C. J. *King* allowed the defendant to give in evidence the declarations of the plaintiff's guardian, on the ground that the guardian was liable for costs. It is said, in 1 *Ph. & Am. on Ev.* 47, note 1, that much confusion has arisen from inattention to

the distinction between the privilege of parties to a suit, and their incapacity in common with other interested witnesses. That a party to the record should not be compelled against his consent to become a witness in a court of law, is a rule founded in good sense and sound policy. It forms the point of the decision in the case of *The King* vs. *Woburn*, 10 *East* 395; *per Tindal, C. J.*, in *Worrall* vs. *Jones*, 7 *Bingh.* 395; *Mauran* vs. *Lamb*, 7 *Cowen* 174. The rule is said not to be founded exclusively on the ground of interest, but on that also of public policy. *Commonw.* vs. *Marsh*, 10 *Pick.* 57. And it is recognized in *Plattekill* vs. *New Paltz*, 15 *Johns.* 305, and in *Frear* vs. *Evertson*, 20 *Johns.* 142. So in an action of ejectment on the several demises of two lessors, one of them is not compellable to give evidence for the defendant, though no title has been proved under his demise. *Fenn* vs. *Granger*, 3 *Camp.* 178. The lessors of the plaintiff, said Lord *Ellenborough*, are substantially the parties on the record. All are jointly liable; that lessor upon whose title the recovery proceeds is generally the trustee of the other; and there are the same reasons for protecting them from being examined, which have produced the general rule of law, that the parties on the record cannot be compelled to give evidence against themselves, and are not permitted to swear in their own favor. *Mayor of Colchester* vs. ——, 1 *P. Wms.* 595; *Chenango* vs. *Birdsall*, 4 *Wend.* 453; *Commonwealth* vs. *Marsh*, 10 *Pick.* 57; *Columbian Man. Co.* vs. *Dutch*, 13 *Pick.* 125; *Page* vs. *Page*, 15 *Pick.* 368. An administrator defendant cannot testify in a cause, because he is liable in the first instance for the costs. *Fox* vs. *Whitney*, 16 *Mass.* 118. If the guardian, then, could have been compelled to testify, the reason for rejecting his declarations does not exist.

But the rule is, that the declarations of a party to the record, against his interest, are admissible. *Spargo* vs. *Brown*, 9 *B. & C.* 935. The leading case on the subject is *Bauerman* vs. *Radenius*, 7 *T. R.* 663, which decides that the

declarations of the plaintiff on record are admissible, although he appear to be only a trustee for a third person. Lord *Kenyon* said it would never have occurred to Sir M. Hale, or Lords Holt or Hardwicke, sitting in a court of law, that they could have gone out of the record and considered third persons as parties in the cause, and that it was " an incontrovertible rule that an admission made by the plaintiff on record is admissible evidence." This decision was followed by the case of *Gibson* vs. *Winter*, 5 *B. & Ad.* 96, where it was held that a trustee suing as plaintiff in a court of law must be treated in all respects as a party in the cause. In that case, a broker in whose name a policy of insurance was effected upon the property of another, brought an action upon it. The defendants pleaded payment to the plaintiff, and it was held that although there was no payment, as between the assured and the assurers, it was a good payment as between the plaintiff on record and the defendants, and therefore was an answer to the action. Several other cases warranting the decision are cited by *Denman*, C. J., in delivering the judgment of the court. And our opinion is that the declarations of the guardian in this case were legally competent as the admissions of a party to the record.

The other declarations of the guardian accompanied the purchase of the property. In addition, therefore, to their having been made by a party to the record, they may be examined in relation to their constituting a part of the *res gestæ*. The circumstances surrounding the principal fact may always be shown to the jury, if they are so connected with it as to illustrate its character ; but it is impossible to lay down any precise general rule, pointing out the cases in which declarations are admissible as part of the *res gestæ*, and those where they must be rejected as the mere assertions of the party. *Pool* vs. *Bridges*, 4 *Pick.* 378 ; *Allen* vs. *Duncan*, 11 *Pick.* 308. In this case the declarations had a peculiar pertinency, from the transaction which they accompanied. The question in controversy was, to whom the

property on the farm belonged. The ward now alleges it was his. But when it was placed there, the guardian had the control over it; and whether it belonged to him or to his ward, in managing it he exercised no more than a legal authority. It was the property of one or the other of them, and on the question of ownership nothing would be more likely to throw light, than the declarations of the person who was actually exercising the control of it. *Blake* vs. *White*, 13 *N. H. Rep.* 267.

Personal property on the land of the ward, purchased and placed there by the guardian, must, *prima facie*, in the absence of evidence to the contrary, be considered as the ward's. *Tenney* vs. *Evans*, 11 *N. H. Rep.* 346. But on its being shown that the guardian had no other property of the ward than the proceeds of the land, the question of ownership was somewhat less clear. The act of purchase might then be considered as somewhat equivocal, and its effect would depend on the intention or disposition from which it proceeded; and this would best be denoted by the expressions accompanying it. Whether the guardian purchased the property with his own money or with that of his ward, was a subject of inquiry. Now, whenever the conduct of a person at a given time becomes the subject of inquiry, his expressions, as constituting a part of that conduct, and indicating his intention, cannot properly be rejected as irrelevant. In questions of fraud, or *bona fides*, where the intent with which an act is done is generally so important, it is difficult to form a correct judgment unless a view is had of the whole transaction, of course including the conversation which forms a part of it. When a man does an act, the presumption is that his contemporary declaration accords with his real opinion and intention. *Hadley* vs. *Carter*, 8 *N. H. Rep.* 40. In that case the question was, whether a servant was enticed from the employ of the plaintiff; and it was held that his declaration, made at the time he left the plaintiff's service, and showing that he went away of his

own accord and for reasons of his own, was admissible. And whenever evidence of an act done by a party is admissible, his declarations, made at the time, and having a tendency to elucidate or give a character to the act, and which may derive a degree of credit from the act itself, are also admissible. *Sessions* vs. *Little*, 9 *N. H. Rep.* 271. These remarks apply to the declarations of the guardian, made at the times of the purchases. They were competent, as part of the *res gestæ.* The other declarations, tending to show the fraudulent character of the transaction, seem to be mere narration, and not a part of the *res gestæ*, as they did not accompany any act, and are competent evidence, as admissions made by a party to the record.

As to the other point in the case, there is no doubt that a guardian may purchase property for his ward ; and if the latter, on coming of age, accept the property and ratify the transaction, the property will belong to him. But a guardian cannot purchase property and place it on the land of his ward, or any where else, to the injury of his creditors. In general, he cannot by his contract bind the person or estate of his ward. *Jones* vs. *Brewer*, 1 *Pick.* 317. But sales made by persons of full age to infants are voidable only by the infant. They could not be avoided by the guardian ; at any rate, where they were made by his assent. *Oliver* vs. *Houdlet,* 13 *Mass.* 238 ; *Barnaby* vs. *Barnaby*, 1 *Pick.* 221. In this case the property did not change its owner by being placed on the ward's land. Nor could the ward make it his while he was under age. It remained the guardian's until the ward became of age and ratified the purchase, whatever might have been the dealings between the guardian and the sellers, or whatever shape their contracts assumed. We think, therefore, that the instructions of the court were correct.

*Judgment on the verdict.*