## John M. Partridge et al *versus* the Trustees of Dartmouth College.

Where a large number of logs were sawed into boards by A, for B, under one contract, it was held that A had a lien on every parcel of the boards for the price of sawing the whole.

Where chattels, upon which C had a lien, were sold by A to B, and B, in order to obtain the chattels, was compelled to pay C's claim, it was held that the sum thus paid might be considered as a payment *pro tanto*, to A.

ASSUMPSIT. The cause was submitted to the decision of the court upon the following facts. In the spring of 1828, the plaintiffs made a contract with the defendants to furnish them with a quantity of boards, to be sawed and delivered at the mills of Mills Olcott, on Connecticut river, in Lebanon, and in May, that year, brought logs to the mill to be sawed for the College. In the month of June the logs were sawed into 130,652 feet of boards, by Olcott. The price of the sawing was by agreement $2, for each 1000 feet, amounting in the whole to $261,24.

On the 20th June, 1828, the plaintiffs, and the agent of the defendants surveyed 78,987 feet of the boards sawed as aforesaid, and removed some of these from the part of the mill yard where the sawyers left them, to another part. And the said agent of the defendants gave to the plaintiffs, a written acknowledgment of the receipt of 78,987 feet of boards for the defendants; and the treasurer of the college, on the back of the said written acknowledgment, stated that there was a balance of $500 due to the plaintiffs for the boards; and on the 23d June, paid to the plaintiffs $100, in part.

In August, 1828, John M. Partridge failed and absconded, and then Olcott, the boards surveyed as aforesaid still remaining in his yard, claimed a lien upon them for the said sum of $261,24 due to him as aforesaid, and refused to permit the defendants to remove the boards

until that sum was paid. The defendants accordingly paid that sum to Olcott, and they claimed to have it allowed as a payment in this suit, and paid into court under the common rule the balance due to the plaintiffs, after deducting the said sum of $261,24.

And it was agreed, that if the whole sum paid to Olcott, as aforesaid, by the defendants, could be legally considered as a payment of so much to the plaintiffs, then judgment to be rendered for the defendants; otherwise, judgment to be rendered for the plaintiff to recover what might be found legally due.

*W. Smith*, for the plaintiffs.

Olcott had no lien upon the boards arising out of any express contract. His lien, if he had any, was a right the common law gave him, as a manufacturer, to retain the property of another upon which he had, at the request of the owner, bestowed skill and labor without a special contract, until he was paid for the labor. 4 N. H. Rep. 353.

Liens in favor of particular classes of manufacturers sometimes exist by virtue of known and established usages of trade, and depend entirely upon those usages, and not upon the general principle above stated. But in this case there is no usage stated, and the claims of a lien had no other foundation than the general principle.

The lien of a manufacturer, at common law, is founded upon the principle that he is a joint owner of the property with the general owner to the extent of the value of the skill and labor bestowed. He has a right to hold the property, not as a pledge or security for a debt, but as a joint owner. 4 Burrows, 2214, *Green* v. *Farmer*; 4 N. H. Rep. 347, *Shapley* v. *Bellows*.

His lien then is confined to the particular article, on which he bestows his skill and labor, and is limited in its extent to the value of that skill and labor.

The lien of the manufacturer, being a right to retain until paid, is of course, at an end the moment he surren-

ders the possesion.   Whitaker on Liens, 68 ; 1  Atkyns,
234 ; Ambler, 252 ; 7 East, 5 ; 1  Strange, 557 ; 1  Bur-
rows, 489 ; 1 Bl. Rep. 653.

And if he deliver to the  general  owner a  part of the
goods, his only lien upon the residue  is to the extent  of
the price of manufacturing that residue.

In this  case the boards were surveyed, and  sold,  and
delivered, by the plaintiffs to the defendants,  before any
claim of lien was made, and we  contend that  this  sale
and delivery put an end to the lien.

But if we are mistaken in  this, we  have  great  confi-
dence that  the lien  did not  extend beyond the price  of
sawing the boards, which were sold to the defendants.

*Bell* and *Olcott*, for the defendants, relied upon the fol-
lowing authorities.   1 Atkyns, 228 ; 3 Espin. N. P.  C.
81 ; 6 East, 519 ; 7 ditto, 224 ; 6 D. & E. 14 ; 4  Espin.
N. P. C. 53 ; Yelverton, 67, note ; 4 B. & A. 344 ; 4  N.
H. Rep. 353 ; 13 Johns. 434 ; 3 East,  93 ; 6 ditto, 622 ;
7 D. & E. 440 ; 3 M. & S. 167 ; 2 Pick. 213.

RICHARDSON,  C. J., delivered the opinion of the court.

It is not denied, that Mr. Olcott had a  lien, originally
upon the boards for the price of the sawing.

But it is contended on behalf of the plaintiffs, that  the
boards which  were purchased by the defendants having
been surveyed and delivered to the agents of the defend-
ants by the plaintiffs, the lien on those boards was there-
by lost.

This ground is clearly untenable.   It does not  appear
that Mr. Olcott had any notice of this survey and delive-
ry, or in any way assented to the proceeding,  and surely
a delivery without his consent could not affect his rights.
1 C. & P. 575, *Wallace* v. *Woodgate*.

It is further said on behalf of the plaintiffs, that the lien
upon the boards sold to the defendants did not extend be-
yond the price of sawing those boards.

It is not pretended that Mr. Olcott had any  general
lien upon the boards.   But as all the boards he had sawed

for the plaintiffs had been sawed under one contract, it is very clear that he had a lien upon every part of the boards for the price of sawing the whole.  6 East, 622 ; Yelv. 67, note ; Abbot on Shipping, 281 ; 3 M. & S. 168, *Blake* v. *Nicholson.*

The payment then which the defendants made to Mr. Olcott, cannot be considered as a voluntary payment, but was a payment they were compelled to make, in order to obtain the boards.  And we are of opinion, that it must be considered as a part payment to the plaintiffs of the price of the boards.  5 Bing. 406, *Carter* v. *Carter* ; 4 Starkie's Ev. 102 ; 6 Taunt. 524,  *Taylor* v. *Zamira* ; 3 B. & A. 516, *Stubbs* v. *Parsons* ; 1 B. & B. 37,  *Andrew* v. *Hancock* ; 1 B. & A. 123,  *Denby* v. *Moore* ; 4 D. & E. 511, *Sapsford* v. *Fletcher.*

*Judgment for the defendants.*