## WALCOTT *v.* KEITH.

Possession is essential, not only to the creation, but also to the continuance of the lien created by a pledge.

Such lien will be forfeited by a voluntary delivery of the property to the pledger.

But possession and control of the property by the wrongful act of the pledger, without the assent of the pledgee, will not create a forfeiture of the lien, nor defeat his right of action to recover damages for an injury to, or a conversion of the pledge.

A person who has received goods as the agent of the owner, and, at the time of the service of the process upon him, holds the same in that capacity only, is

Walcott *v.* Keith.

not chargeable as the trustee of a purchaser, to whom he has delivered the same, by the direction of such owner.

The service of the trustee process, confers upon the trustee the right to hold the possession of all such goods of the principal debtor, as he may be chargeable with in the process, as against such principal debtor, or a subsequent purchaser.

But such right, or lien, is personal to the trustee, and may be relinquished or waived by him, either in favor of the principal debtor, his pledgee, or any purchaser from him.

Where B. had the possession of goods as the agent of S., and was summoned as the trustee of C., while the goods thus remained in his possession, and S. sold the goods to C., and B., by the direction of S., delivered them to C., who delivered them to W., to indemnify him against his liability incurred in behalf of C., and the goods were afterwards attached by an officer as the property of C., and redelivered to B., and remained in B.'s possession at the commencement of the suit brought to recover damages for a conversion of the pledge; it was *held*, that the delivery of the goods to W., under the circumstances, constituted a valid pledge, and that the pendency of the trustee process did not operate to defeat the lien of W., nor his right of action, commenced for the purpose aforesaid.

The fact that B., at the time of the delivery of the goods to C., told C. that he would rather he would not remove them, it being no more than an expression of a preference in the matter, did not avoid the effect of the delivery of the goods to C. as a waiver of any lien as trustee, which he had at the time.

Where permission was given to a party in interest, to use the name of another, as the plaintiff in a writ of attachment, in virtue of which the goods of a third person, not the debtor in the action, were attached by the direction of the real plaintiff, and, after the attachment, the nominal plaintiff, upon being inquired of by the agent of the owner of the goods, whether he was the real or the nominal plaintiff, replied, that he was "the plaintiff," and upon being farther asked, if he had not better give up the property, replied, "I guess not,"— it was *held*, that these furnished abundant evidence to charge him with a conversion of the goods attached.

Where, in an action of trover, an actual conversion is shown, upon the other facts of the case, and a demand and refusal are not relied upon for that purpose, it can furnish no ground for setting aside the verdict, that the court refused to instruct the jury that under the circumstances of the case, a demand and refusal would not be evidence of a conversion.

And, where a conversion is made out upon the other facts in the case, it would be erroneous to hold that proof of a demand and refusal were necessary; and, moreover, in such a case, the refusal of the court to instruct the jury in relation to the sufficiency of the evidence of a demand, can furnish no ground for setting aside the verdict.

When a plaintiff in an action, has caused the goods of a person to be attached, who is not the debtor named in the action, the declaration of the owner, subsequently made to the officer, that he owns a part of the goods attached, will

17 *

Walcott *v.* Keith.

not justify the party in making the attachment of the goods, or in the subsequent retention of them, where it is not shown that the goods were of such a character, or that they were intermixed with the goods of the debtor in the writ, in such a manner, that they could not, upon due inquiry, be distinguished by the officer who acted in making the attachment, or that the aid of the owner was required for the purpose.

It forms no ground of exception to the instructions given to the jury, that they are not given in any precise form, provided the instructions, proper in the case, are given in any form.

The declaration of a party while in the possession of goods, that " he had made over the property " to a third person, which declaration was made *ante litem motam*, is competent evidence, upon a question of title in favor of such third person, against a creditor of the declarant, who has subsequently attached the same as his property.

The possession of goods by the vendee, after the sale, is competent evidence to be submitted to a jury, of fraud in the transfer.

So, also, the notoriety of a sale or other transfer of property, is always strong evidence to rebut the inference of fraud, from such possession, by the vendee.

The declarations of the parties to the transfer of the property, made after the contract, and while the party making the transfer is still in possession of it, and before any adverse claim or attachment was intervened, and calculated to give notoriety to the transfer, are competent evidence to repel the suggestion of secrecy and the inference of fraud, arising out of such possession by the vendee.

TROVER, for sundry articles of personal property. The writ was dated November 5th, 1847. Plea, the general issue.

It appeared that the property in question was, on the 3d of November, 1847, in the possession of one Brown, as agent for one Southard; that on that day, by an agreement between said Southard and one Cook, the property became Cook's and was delivered to him by Brown, by direction of Southard. This delivery was a formal one, and, at the time of making it, Brown told Cook, that he would rather that he would not take the property away, as he was trusteed. This conversation took place in the basement, and the plaintiff was not present, but was in the upper part of the store, and the property was taken away soon after from the basement, where it had been, and was loaded upon the wagon, the parties not having left the store before it was loaded. There was no evidence that Brown consented that it should be taken away, except as aforesaid. On the 2d of November, the property being then in the possession of Brown, a

trustee writ was served on said Brown as trustee of Cook. The writ was in favor of one Taylor, and the suit is still pending in Court.

While the property was in the hands of Brown, the plaintiff agreed with Cook to sign a note with him for $100, and take the property into his hands, and sell and dispose of it, and apply the avails to the payment of the note. The note was signed, the money raised, and the plaintiff afterwards paid the note.

Evidence was introduced, on both sides, tending to prove and disprove a delivery of the property from Cook to the plaintiff on the 3d of November. After the transactions between Cook and the plaintiff, on said 3d of November, the property was placed in a wagon to be moved from Brown's possession. In the meantime a writ was procured in the name of the present defendant, on a note belonging to one Page, said defendant having agreed to the bringing of the suit in his name. On this writ the property was attached while in the wagon, but it did not appear that the defendant gave any directions in relation to the attachment or ever interfered personally with the property in any way. After the attachment, the property was brought back by the officer and again placed in the possession of Brown.

While the officer was returning the property to Brown, the plaintiff met him and told him that he owned a part of the property, but did not designate what part, and passed on.

Before this action was brought the plaintiff's attorney called on the defendant and asked him if he was the real or only a nominal plaintiff in the suit on which the attachment had been made, and the defendant replied that he was plaintiff. The witness then told the defendant that the plaintiff would commence a suit for the property, and asked him if he had not better give it up, and the defendant replied " I guess not."

As the trustee suit had been commenced, and the process served upon Brown before any delivery to the plaintiff, and was pending at the time of the commencement of this suit, and as the property was in Brown's possession at the time of the service of said process upon him, and was restored to his possession immediately after the attachment, where it remained until after the

commencement of this suit, the defendant moved that a nonsuit be entered, but the Court refused to order a nonsuit.

The defendant requested the Court to instruct the jury " that as Keith never meddled with the property, and had no interest in the suit in which it was attached, a demand made upon him, and a refusal to deliver the property would not make him liable.

That if Keith merely permitted the suit to be brought in his name, at the request of a real plaintiff having no interest in the suit, and did not direct the attachment of this property, and never meddled with the property, that a demand upon him was necessary before the commencement of this suit, and that the testimony above set forth showed no sufficient demand, and therefore the suit could not be maintained.

That if the jury believed that Cook continued to exercise control over the property, by himself or his agents, by Walcott's permission or otherwise, at the time of the attachment, then there was no such delivery to Walcott, and no such possession in him as would enable him to maintain this action.

That Walcott's declaration to the officer, that he owned a part of the property, justified the defendant in attaching and retaining the property until Walcott should designate what part of the property he claimed, and, under the circumstances, is evidence that Walcott owned only a part of the property. If the part owned by Walcott was owned by him in common with Cook, the defendant might rightfully attach the whole, and sell, upon his execution, Cook's interest."

But the Court did not give the several instructions requested, but charged the jury that if they believed the evidence in regard to what had been done by the defendant and the steps that had been taken to recover the property from him, a sufficient conversion was made out to sustain the action, provided they should find that Cook delivered the property to the plaintiff prior to the attachment, and that the plaintiff never thereafter relinquished his right of possession.

In the course of the trial, Brown was introduced as a witness for the defendant, and on cross-examination he testified that Cook told him that morning, (Nov. 3d, while in the basement,

and when Brown told him that he had been trusteed,) that he had made over the property to Walcott. He also testified, on cross-examination, that after the property was loaded upon the wagon and before it was drawn away, Walcott told him that he owned the property. These statements were made by the witness, not in answer to direct questions upon those points, but in giving an account of the transactions of the parties. No exceptions were taken to the testimony at the time the witness was testifying, but before the Court charged the jury, the defendant requested the Court to instruct them that this evidence was not competent to be submitted to them. The Court declined so to instruct the jury. The case was not argued to the jury. The jury returned a verdict for the plaintiff, and the defendant moved to set the same aside, and for a new trial for supposed error in the foregoing decisions of the Court. The defendant also moved in arrest of judgment ; because, it appearing that he never interfered with the attachment or the property, and never gave any instructions in regard to either, the action should have been a special action of trespass on the case, and not trover.

And the questions arising upon said motions, were assigned to this Court for determination.

*Felton* and *Page*, for the defendant. The defendant would not have made himself liable, had he been the real plaintiff in interest, by merely suing out his writ and placing it in the hands of an officer, with directions to attach property ; and had the officer attached the property of a third person, his doing so would have been unauthorized by the defendant; the only authority being to attach the property of the debtor. In that case the defendant might have made himself liable in several ways — as by directing the attachment of the property in question, indemnifying the officer, or by intermeddling with the property. A merely nominal plaintiff may make himself liable in the same way. 1 Bos. & Pull. 369 ; Starkie's Ev. part 4, page 1493.

The case finds that Keith was a nominal plaintiff, and did not interfere personally with the property. He did not become liable by reason of the conversation between him and the plaintiff's

attorney. His reply, that he was plaintiff, did not make him liable. If liable at all, he made himself so when, being asked if he had not better deliver up the property, he replied, "I guess not."

It does not appear that the attorney informed the defendant that he was acting as agent or attorney of the plaintiff. A demand by a known agent, and one empowered and prepared to receive the property, was necessary. 5 East, 498 ; Paley on Agency, 266.

The plaintiff's property was not a general, but a special property, and in such a case, he must have an actual possession. A mere right of possession is not sufficient to maintain trover. 2 Greenl. Ev. 640, note 2, and authorities there cited.

Although Cook delivered possession to the plaintiff, yet, if the plaintiff suffered Cook to exercise control over the property at the time of the attachment, he thereby gave up his actual possession, although he might have retained his right of possession as against Cook, and everybody else. We take a distinction between an actual possession, and a right of possession.

At the time the plaintiff told the officer that he owned a part of the property, the defendant had done nothing to make himself liable. The plaintiff's declaration, that he owned part of the property, fully justified the defendant in retaining the property. 7 Mass. Rep. 127 ; 5 N. H. Rep. 364.

Cook's declaration, that he had made over the property to the plaintiff, might have been evidence to show that the plaintiff had a right to take possession as against Cook, but was no evidence of a delivery, or making over, as between the parties.

The plaintiff's declaration, that he owned the property, was wholly incompetent, and should have been ruled out of the case. It accompanied no act of the plaintiff, so as to constitute a part of the *res gestæ*.

*Morrison*, (with whom was *Bryant*,) for the plaintiff.

I. The bargain between Cook and Southard was not completed, until the property was delivered to Cook by Brown. Therefore, it was not in the custody of the law, and Brown could not be

charged as Cook's trustee, for he never held the property for Cook. But if he had been chargeable as such, the present plaintiff might receive it subject to such attachment, and obtain a good title against any one, not claiming under the trustee suit. *Whipple* v. *Thayer*, 16 Pick. 25 : *Fettyplace* v. *Dutch*, 13 Pick. 388.

II. Walcott obtained a valid title, as against Cook's creditors. 2 Greenl. Ev. § 637 and note ; *Jones* v. *Baldwin*, 12 Pick. 316 ; Story on Bailments, § 303. Under the charge, the jury must have found, that he both *took* and *retained* possession of the property, and that " Cook did not continue to exercise control over it, by himself, or his agents, with Walcott's permission."

III. No demand was necessary before commencing the suit, by reason of the wrongful taking. 1 Chitty Pl. 153 ; 13 N. H. Rep. 494. The sheriff attached this property on a writ, in favor of the present defendant, and took it from the present plaintiff wrongfully, and detained it, with the *assent* of said defendant. 1 Chitty Pl. 181. Keith's permitting the suit to be brought in his name, and assuming to be the real plaintiff, when asked about the property by the plaintiff's agent, would estop him from denying that he was such, for all the purposes of this suit. *Dezell* v. *Odell*, 3 Hill's Rep. 216 ; *Page* v. *Foster*, 7 N. H. Rep. 392.

IV. He assumed a right of control, and dominion over said property, which was a conversion. 1 Chitty, Pl. 155 ; *Hyde* v. *Noble*, 13 N. H. Rep. 494.

V. He made no objection that Bryant had no authority to make the inquiry and demand. The evidence is sufficient *primâ facie* that he had ; and there is nothing to contradict it. *Payne* v. *Smith*, 12 N. H. Rep. 34.

VI. The objection to the competency of certain evidence, after the evidence was all closed, came too late. 1 Greenl. Ev. 467 ; *Concord* v. *McIntire*, 6 N. H. Rep. 527 ; *McKee* v. *Nelson*, 4 Cow. 355. It would be an act of injustice, to allow either party to object to the competency of evidence, introduced by the other, after the testimony was all put in, without previously expressing his dissent, for he could have the benefit of it, if it made

in his favor, and deprive the opposing party of any benefit from it, if it made against him. Besides, under the circumstances, the evidence was competent, as showing that the transfer was open and avowed, and as a part of the *res gestæ*.

VII. Walcott's declaration to the officer, that he owned a part of this property, if made, is no answer to the action; for the wrongful taking was a conversion, and the defendant had the benefit of the declaration, as far as it had any bearing upon the question of the delivery and possession of the property.

WOODS, J. The jury have found, that the property in question was delivered to the plaintiff by Cook, on the third day of November, 1847, prior to the attachment of it upon the writ in favor of the defendant, and that the plaintiff never thereafter relinquished his right of possession, acquired by the transaction, between him and Cook. Cook, at the time of the delivery of the goods to the plaintiff, was the owner thereof by a purchase from Southard, and had the possession by delivery from Brown, the agent of Southard, by Southard's direction. The property was delivered to the plaintiff in pledge, to indemnify him against loss, by reason of his having signed a note with Cook, and, by the terms of the agreement, the plaintiff was authorized to sell and dispose of the property, and, with the avails, to pay and discharge the note. Upon the facts, as thus far stated, no doubt could arise of the sufficiency of the plaintiff's property, possession, and right of possession, to enable him to maintain the action of trover against one who had converted the goods.

But it is contended, on behalf of the defendant, that the plaintiff acquired no such possession and right of possession, by the purchase and delivery aforesaid, as will sustain this action. The pendency of the suit against Brown, as the trustee of Cook, and the service of that process upon him while he had the possession of the property, before its delivery to the plaintiff, together with the restoration of the property to Brown by the officer who attached it on the writ in favor of the defendant, and the continuance of Brown's possession, with the commencement of the pre-

Walcott *v.* Keith.

sent action, are made the foundation of objection to the right of the plaintiff to maintain .the present action, and of the motion for a nonsuit. The mere pendency of the trustee suit against Brown could, ·alone, have no effect upon the plaintiff's right. While Brown had possession of the property, he held it as the agent of Southard, the admitted owner, prior to the sale and delivery to Cook, on the third day of November. And the property remained in Southard, until its delivery to Cook, by Brown, as the agent of Southard. Brown, then, never held the property as the agent of Cook, but only as the agent of Southard, and could never have been made liable for it as the trustee of Cook.

But if Brown might have been rendered liable for the value of the property in that suit, still the service of the process gave the creditor no right or lien upon the specific property, but would only render the trustee personally liable for its value, in case of any misappropriation of the property by him, or failure to produce or account for it according to the provisions of the statute. It is true that, if the property had belonged to Cook, and had been holden by the trustee, as his agent, he might have been made liable for the same, or its value; and for that reason, the law would doubtless give him the right to hold the possession against Cook, or any subsequent purchaser or pledgee of the same. But this could only be a power, or right, personal to the trustee himself, and vested in him alone, but giving to the creditor no right or interest whatever in the property itself. And it would follow from this view, that the trustee would have the right to relinquish, or waive such right or lien upon the property, either in favor of the ·principal debtor, or his pledgee, or any purchaser from him. In the present case, Brown did, by the direction of Southard, deliver the goods to Cook, and Cook to the plaintiff; and that transaction amounted to a waiver of the right of Brown to the goods, or the possession by virtue of the trustee process, whatever that right might have been.

The mere fact that Brown, at the time of the delivery to Cook, told him that he would rather he would not remove the property, as he had been trusteed, while, at the same time, he permitted

it to be done, could not alter the case, nor avoid the waiver of his lien. It was no more than an expression of a preference in relation to the matter, and cannot be regarded as a refusal to deliver the property, agreeably to Southard's direction. Brown did not refuse to comply with Southard's direction, and the possession was taken by Cook, with the assent of Brown, which, in legal contemplation, operated as a waiver of all right or claim which Brown had to the possession of the property.

The attachment of the property by the officer, and the delivery of it to Brown, which were merely unauthorized acts of trespass, could not, in any manner, change or abridge the rights of the plaintiff.

We are therefore of the opinion, that the ruling of the Court below, refusing to grant the motion for nonsuit, was correct.

Another general question, raised in the case, is whether the facts reported show a conversion by the defendant. Permission was given by the defendant to use his name as plaintiff in the action in which the goods in question were attached. This permission conferred upon the real plaintiff an authority to make such use of the writ in the service of it, as well as in the subsequent proceedings in the action, as in his discretion he might deem fit and proper, or at least such as is customary in the service of such process. The act done in the present case, and here complained of, was the attachment of the personal property, by virtue of the writ. This is a use customarily made of such process; and in fact, in the case of a writ of attachment such as this, no sufficient service could be made otherwise than by an attachment either of personal, or real property. The use made of the process, then, was fully authorized by the defendant. The act being thus authorized, the defendant was clearly chargeable with the consequences legally and usually resulting from it. He cannot be allowed to say, in answer to the plaintiff's claim for damages, that, by the command in the writ, the officer was directed to attach the property of Cook only, and not of the plaintiff. Having put it in the power of the real plaintiff in that action to abuse or misuse the process, he must, in law, be held answerable to third persons, as well as to the opposite party, for

the damages resulting therefrom. But the defendant did more than simply to give permission to use his name, as plaintiff in the action. He was not merely passive in the matter. The case shows abundant evidence of an actual claim of right to the property, and of control over it, after the attachment was made by virtue of the writ. Upon being inquired of, whether he was the real or nominal plaintiff, he replied that he was "the plaintiff;" and upon being asked if he had not better give up the property, he replied, "I guess not." Here was plenary evidence of a claim of right of control and of dominion over the property attached, in exclusion and defiance of the plaintiff's claim of right, and amounting to a clear recognition of the authority, under which the attachment was made. The present plaintiff, by his agent, in substance charged the defendant with the wrongful act complained of in this suit, and informed him that he would be sued for the damages; and still he claimed to be the plaintiff in the action, in which the property had been attached, and did not consent to give it up when claimed, but in effect refused to do it. We therefore think that both a prior authority and a subsequent assent, on the part of the defendant to the taking of the property in question, together with the exercise of a claim of right to dominion over it, are abundantly shown by the evidence reported in the case, either of which would furnish sufficient ground upon which to charge him with the conversion of the goods in controversy.

Complaint is made in the case, that the Court refused to instruct the jury "that, as Keith never meddled with the property, and had no interest in the suit, in which it was attached, a demand made upon him, and a refusal to deliver the property, would not make him liable." It is not pretended in this case, that Keith had any personal interest in this suit, or that he personally interfered with the property in question, nor does the case show an attempt to charge him with a conversion, upon the ground of a demand and refusal. The trial did not proceed upon any such view. It was however found by the jury that Cook delivered the goods to the plaintiff, and that he never relinquished the possession to any one. And it appears, moreover, by the

other facts in the case, that the property was taken possession of by an officer, by virtue of a writ issued in the name of the defendant with his assent, and we have already decided, that the use made of the process in so doing was fully authorized by the defendant, and recognized and assented to by him afterwards. Upon the facts, then, before the Court, there was no call for any such instruction as was desired by the defendant. The Court very properly left the case to the jury, upon its true and legitimate grounds, apparent upon the case, namely, an actual and rightful possession of the goods by the plaintiff, without relinquishment, and a wrongful dispossession of him by the authority of the defendant. The instruction requested could not in any manner have benefited the defendant. It could have been of no service to the defendant, if the Court had given them the instruction, that, under the circumstances, a demand and refusal would not furnish evidence of a conversion; while, at the same time, they were properly instructed that a conversion was made out upon the other facts in the case, of which evidence was laid before them, and which they found to be true. It could not have entitled the defendant to a verdict if the Court had told the jury that, " a demand upon him, and a refusal to deliver the property would not make him (the defendant) liable," while at the same time, as we have seen upon the other facts found, either with or without a demand and refusal, the defendant was chargeable with the alleged conversion.

The Court below were further requested to charge the jury, " that, if Keith merely permitted the suit to be brought in his name, at the request of a real plaintiff, having no interest in the suit, and did not direct the attachment of this property, and never meddled with the property, that a demand upon him was necessary before the commencement of this suit, and that the testimony set forth in the case showed no sufficient demand, and therefore the suit could not .be maintained." We regard the refusal in this particular as being entirely justifiable. We have already seen that it was not necessary that the defendant should have personally meddled with the property, or have specially directed the attachment of it, — that the admitted use allowed

and made of his name and of the process, and his subsequent acts, furnished sufficient evidence to charge him with the conversion of it. And, in that state of the case, it would have been clearly erroneous in the Court, to have instructed the jury that a demand was necessary, and that without it the suit could not be maintained. Upon this view of the case, it is unnecessary to determine the question of the sufficiency of the evidence of a demand, as furnished by the facts reported in the case.

The Court were also requested to instruct the jury, " that, if they believed that Cook continued to exercise control over the property by himself or his agent, by Walcott's permission or otherwise, at the time of the attachment, then there was no such delivery to Walcott, and no such possession in him as would enable him to maintain this action." The Court refused to comply with this request. The direction desired was, in effect, that, if Cook at the time of the attachment, was in wrongful possession of the property, and in that way exercising control over it, such wrongful possession and control would so far defeat the effect of the delivery to, and the possession of the property by the plaintiff, as to destroy all right of property and of possession, and consequently all right of action vested in the plaintiff to recover the same by reason of the original delivery of the pledge. It is true that continued possession is requisite to preserve the lien that is created by the pledging of the property. *Colby* v. *Cressy*, 5 N. H. Rep. 239. Possession is essential, not only to the creation, but also to the continuance of the lien, and when the party voluntarily parts with the possession of the property upon which the lien has attached, he is divested of his lien. 2 Kent Com. (4th ed.) 639. A lien is always forfeited by delivery. But a delivery procured by fraud is not within the rule. It is no delivery. *Bigelow* v. *Heaton*, 6 Hill's Rep. 43; *Wallace* v. *Woodgate*, 1 Car. & Payne, 575; *Partridge* v. *Dartmouth College*, 5 N. H. Rep. 286. If the request had gone no farther than to ask the Court to charge the jury, that, if Cook continued to exercise control over the property at the time of the attachment by Walcott's permission, then this action could not be maintained, and

18 *

the Court had declined so to instruct them, it might well be doubted whether such refusal could have been justified upon the well established rule of law, applicable in such a case. *Colby* v. *Cressy*, and 2 Kent Com. 639, before cited. In fact, the charge to the jury impliedly goes to the extent of this doctrine. But the Court was called upon to go farther, and to instruct the jury, that the exercise of control by Cook after the pledge, without the assent of Walcott, would defeat his right of action. And the complaint is, that the Court withheld this branch of the instructions ; that the Court did not go the entire length of the instructions requested to be given. The principle involved in the request of the defendant is, that a dispossession of the pledgee by the wrongful act or fraud of the pledgor, would defeat the right of the pledgee growing out of the pledge. But such a rule of law would be at war with every principle of reason and justice, as well as opposed to all the analogies of the law. It would be equivalent to holding, that a pledgor, after delivering his property in pledge to the pledgee upon a good consideration, might, by the commission of an act of larceny in relation to it, defeat every right acquired by the pledgee. But the law is chargeable with no such absurdity. The rights of a pledgee cannot be thus defeated by the wrongful acts of others, in depriving him of the possession of the property, but only by his own voluntary act of dispossession. See *Bigelow* v. *Heaton, Wallace* v. *Woodgate,* and *Partridge* v. *Dartmouth College,* before cited. We are therefore of the opinion, that the refusal of the Court to give the instructions requested in this particular was proper.

The declaration of Walcott to the officer, that he owned a part of the property, did not justify the defendant in making the attachment, and retaining the property until Walcott should designate his part of it. It was made after the attachment, and cannot be regarded as having led to it. The officer did not, of course, act upon the faith of the truth of that assertion, and the defendant cannot, therefore, justify, upon the ground that he was misled by the act of the plaintiff, in making the declaration. Besides, it does not appear, from the case, that the goods in dispute were of such

a character, or that they were intermixed with those of Cook, in any such manner, that they could not, upon due inquiry, have been distinguished by the officer who made the attachment, or that the aid of the plaintiff was required for that purpose. In order to justify the attachment, it was incumbent upon the defendant to show, that the goods were of such a character, or at least, that there was such an intermixture. This view is fully sustained by the authorities. *Holbrook* v. *Hyde*, 1 Vermont Rep. 331 ; *Bond* v. *Ward*, 7 Mass. Rep. 123; *Sawyer* v. *Merrill*, 6 Pick. 447 ; *Shumway* v. *Rutter*, 8 Pick. 443 ; *Lewis* v. *Whittemore*, 5 N. H. Rep. 364. It would have been clearly erroneous in the Court, to have instructed the jury, as requested by the defendant, as to the effect of Walcott's declaration, as a justification of the attachment, or of the retention of the property. It was, at most, evidence tending to show that the plaintiff owned only a part of the articles attached ; and that alone, as we have seen, would not justify the attachment of that part. And we think that it could hardly be legitimately inferred, from his declaration in connection with the other facts in the case, that he was tenant in common with Cook, of any part of the property attached. But, at all events, the finding of the jury may be regarded as determining the fact, that the entire property attached was delivered by Cook, the owner, to the plaintiff, as a security for his liability for Cook. Cook was confessedly the owner of the entire property, and he delivered it all to the plaintiff, according to the finding of the jury, and the purpose of the delivery is not contested. Upon the whole, then, we think that the Court below was fully warranted in refusing to give the instruction requested, in the form of that request. It was not error in the Court, nor is it a cause for setting aside the verdict. And, in fact, in no case does it constitute a ground of exception, that instructions are not given to the jury, in any precise form, if the instructions proper in the case are given in any form. *Holbrook* v. *Hyde*, before cited. The defendant was told that a part of the property was the plaintiff's, and although he had an opportunity, he made no request of an identification of it. It may well be inferred, we think, from his silence, that he had no occa-

sion for any further information than he already possessed, or
even that he wholly denied the validity of the plaintiff's claim
to the property.

A further question arises in relation to the competency of the
declarations of Cook and Walcott, as evidence for any purpose
in the cause. If they had a legitimate tendency to prove any
fact essential to the plaintiff's case, then the refusal of the Court
to instruct the jury to lay that evidence out of the case was
proper. We think the declaration of Cook, under the circum-
stance, was clearly admissible, as tending to show the nature
and character of his possession. The declaration was made at
the time of the delivery of the goods to him by Brown, and
while he was in possession of the goods, and, of course, before
their delivery to Walcott. It was material for the plaintiff to
show, at the trial, that he had *bonâ fide* acquired the interest of
a pledgee, in the property in dispute, prior to the attachment.
The defendant denied that it was, at that time, the property of the
plaintiff, or that he had any interest therein, and the question is,
whether the declaration made by Cook, upon receiving possession
of the goods from Brown was evidence, legally tending to prove
the interest of the plaintiff. The title to the property at the time,
rested either in the plaintiff or in Cook, and at the time of the
declaration, Cook had formal possession of it. Cook said, " he
had made over the property to Walcott." This declaration was
calculated to characterize Cook's possession, and to rebut the
presumption of ownership in him, arising out of the fact of pos-
session, and, indirectly, to show the right of the plaintiff. It
was explanatory of his possession. Moreover, it was in dispa-
ragement of the title of the declarant. In relation to the declara-
tions of persons in possession of land, explanatory of their posses-
sion, it is well settled that declarations in disparagement of the
title are, in many instances, admissible. *Peaceable* v. *Watson*,
4 Taunt. 16 ; *Doe* v. *Pettett*, 5 B. & Ald. 223 ; *Carne* v. *Nicoll*,
1 Bing. N. C. 430. In *West Cambridge* v. *Lexington*, 2 Pick.
536, *Putnam*, J., in delivering the judgment of the Court said,
" the plaintiffs rested the question whether Bemis was seised of a
freehold upon a presumption arising from long possession by

himself and his assigns. This presumption was attempted to be invalidated by evidence of his own declarations, that he had not a deed, but only a writing, in which the owner of the land promised to make a good deed. The Court are of opinion, that the evidence was properly admitted. The declarations of Bemis were in disparagement of his estate. They were not uttered with reference to the present state of things, and they go to show, that, at the time, he was without a legal estate." *Woods* v. *Blodgett*, (decided in this county, July Term, 1846,) was trover for a quantity of corn. The defendant, as constable, on a writ against one Moore, attached the corn as his property. The corn was raised upon a farm belonging to the plaintiff, by the labor of said Moore, who lived upon the farm, and it was put into buildings thereon. Moore testified that he managed and cultivated the farm as the hired man of the plaintiff. The deposition of one Duncan was given in evidence by the plaintiff, which contained the following clause : " at the time Moore was at work on the corn, he said it was Mr. Woods's corn." This declaration, made *ante litem motam*, was held to be competent evidence, to rebut the presumption of ownership in Moore, arising out of his possession ; the declaration going to illustrate and characterize his possession, and in connection with that fact forming a part of the *res gestœ*, and also, being against the interest of the declarant and in derogation of his title, and deriving a degree of credit from that circumstance. The declaration of Cook in this case, was equivalent to an assertion that the property of the goods belonged to Walcott at the time, and was not merely narrative of a past occurrence, which would be clearly inadmissible. 1 Greenl. Ev. 122. Declarations, to become part of the *res gestœ*, must be made at the time of the act which they are supposed to characterize, and must be calculated to unfold the nature and quality of the facts which they are intended to explain, and so to harmonize with them as obviously to constitute one transaction. *Enos* v. *Tuttle*, 3 Conn. Rep. 250 ; 1 Greenl. Ev. 120. " Where evidence of an act done by a party is admissible, his declarations, made at the time, having a tendency to elucidate or give a character to the act, and which

may derive a degree of credit from the act itself, are also admissible as a part of the *res gestæ.*" *Sessions* v. *Little,* 9 N. H. Rep. 271 ; *Holbrook* v. *Murray,* 20 Vermont Rep. 525. Mr. Starkie states the evidence as follows : " If the declaration has no tendency to illustrate the question, except as a mere abstract question, detached from any particular fact in dispute, and depending for its effect entirely on the credit of the person who makes it, it is not admissible in evidence ; but if, on the contrary, any importance can be attached to it, as a circumstance which is a part of the transaction itself, and deriving a degree of credit from its connection with the circumstances, independently of any credit to be attached to the speaker or writer, then the declaration or entry is admissible in evidence." 1 Stark. Ev. 47. In many cases, where a man has the means of knowing the fact, and it is against his interest to admit it, his admission is evidence against another person. The evidence results from the improbability of a man's admitting as true, what he knows to be false, against his own interest. " In such cases, an admission is as strong against another person, as it is against the person who made it." *Hinkley* v. *Davis,* 6 N. H. Rep. 210. Upon the doctrine of the cases and authorities cited, we think that the declaration of Cook was admissible as a part of the *res gestæ;* characterizing and illustrating his possession, connected with it, and rebutting the evidence of his ownership arising from it, without depending for its effect upon the character of the declarant, and being against his interest when made.

We are also of the opinion that the declaration of Walcott was admissible in the case, as legally tending to give notoriety to the fact of the sale. After the contract made with the plaintiff, and at the time of the declaration made by Walcott, the property was in the basement of the store, and apparently as much in the possession of Cook as in that of any one. Walcott was in the upper part of the store, and the property was being put into the wagon, to be removed, as we infer, and placed in the custody of Walcott. Such permission by Cook was proper evidence to the jury of fraud in the transfer to Walcott. The notoriety of a transfer or sale of property, is always a strong

circumstance to rebut any inference of fraud, in such a case. *Watkins* v. *Birch,* 4 Taunt. 823; *Leonard* v. *Baker,* 1 M. & S. 251; *Kidd* v. *Rawlinson,* 2 B. & P. 59; *Jezeph* v. *Ingram,* 8 Taunt. 838; *Lewis* v. *Whittemore,* 5 N. H. Rep. 364. The declarations of Walcott, as well as of Cook, were well calculated to give notoriety to the transaction. In *Boyden* v. *Moore,* 11 Pick. 365, *Shaw,* C. J., remarked as follows: "That part of the declaration in which he (the plaintiff) said that he owned the horses under a bill of sale, was immediately after the sale, before any attachment or other adverse claim had intervened, to a person having custody of the horses, and who might be called upon for information, and was, we think, competent as proof of notoriety, and to repel the suggestion of secrecy arising upon the fact relied upon, that, notwithstanding the supposed sale, the property remained in the custody of the vendor. In all these respects, those declarations were acts done, and were competent evidence to repel the charge of fraud." In *Trask* v. *Bowers,* 4 N. H. Rep. 309, which was a controversy between a purchaser of certain personal property, and an officer who had attached the same as the property of the vendor, it appeared, that persons living in the neighborhood of the property, which remained in the possession of the seller, did not know of the sale. The Court, after stating the facts, say, "if all this had been done openly, and without any secrecy, and Tilton's real situation in relation to the property had been known in the neighborhood, we are not prepared to say that this explanation would not have been a good answer to the imputation of fraud in the transaction." These authorities, we think, clearly show, that for the mere purpose of repelling the conclusion of fraud, which it would have been competent for the jury to make, from the possession of Cook, such as is shown by the case, the declaration of Walcott was admissible in evidence.

Upon the whole, we find no reason for setting aside the verdict, and granting a new trial, and there must be

*Judgment on the verdict.*